IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-00941-RM-SKC

DENNIS L. BROWN, and,
PAUL D. BROWN,

    Plaintiffs,

v.

BRADLEY J. TENNISON,
FREDERICK ARIAS,
WAYNE EDWARD BELL,
TENNISON INVESTMENTS, INC., an Arizona corporation,
SHIELD DEFENSE SYSTEMS, INC., a Nevada corporation, and
JOHN DOES NUMBERS ONE THROUGH THREE,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY [ECF. #46]**

    This order addresses Defendants' Bradley J. Tennison ("Tennison") and Tennison Investments, Inc. ("TII") (collectively, the "Tennison Defendants") Motion to Stay Proceedings (the "Motion") [#46].[1] District Judge Raymond P. Moore referred the Motion to this Court. [#47.] The Court has reviewed Plaintiffs' Response [#49], the Tennison Defendants' Reply [#50], and the Tennison Defendants' Status Report [#62]. The Court has also reviewed relevant case law and the court file. No hearing is necessary. For the following reasons, the Motion is GRANTED.

---

[1] The Court uses "[# __ ]" to refer to entries in CM/ECF.

1

## A. BACKGROUND

### 1. The Alleged Scheme

According to Plaintiffs, this case arises out of a scheme in which they were lured by Defendants into investing nearly $5,000,000.00 in an investment vehicle called "The Joseph Project." [#53 at p.3.] Relevant here, Plaintiffs invested in the project at the direction, request, or solicitation of Tennison, who owned and operated TII. [*Id.*] In the end, Plaintiffs never received the investment returns they were promised and lost "substantially all of their investments in The Joseph Project . . . ." [#1 at ¶¶217-18.] Plaintiffs brought this action asserting the following claims for relief: (1) "Securities Fraud/Violation of Colorado Securities Act and Aiding and Abetting Securities Fraud in Violation of [C.R.S.] §11-51-501 and §11-51-604"; (2) "Control Person Liability Pursuant to C.R.S. §11-51-604(5)(a),(b), and (c)"; (3) "Breach of Fiduciary Duty"; (4) "Civil Theft Pursuant to C.R.S. §18-4-405"; (5) "Negligence"; (6) "Participating in and Aiding and Abetting Violations of the Colorado Organized Crime Control Act, C.R.S. §18-17-101, *et seq.*; and (7) "Piercing the Corporate Veil and Reverse Veil Piercing." [*Id.* at ¶¶219-94.]

### 2. Parallel Proceedings

Three other lawsuits involving Tennison bear on the Motion. The first is a civil lawsuit filed in Arizona state court by Tennison and his family members in February 2019 (the "Destiny Trust Case"). [#50 at pp. 2-3.] In that case, Tennison sued several individuals and entities whom he alleges stole money he and his family invested in the Destiny Trust. [*Id.*] The claims are like those brought against Defendants in the present case. [#49 at pp.7-8.] Tennison argues that the Destiny Trust Case "provided [him] the

ability to subpoena bank accounts and trace and analyze both the Destiny Trust and Joseph Project funds as the two were part of the same scheme being used by the persons controlling the Joseph Project." [#50 at p.3.]

The second is a civil lawsuit filed by Tennison and his family members in May 2019 in the Superior Court for the State of Arizona in and for the County of Maricopa (the "Joseph Project Case"). [#49-1.] Tennison filed the case after he analyzed bank records obtained through a subpoena in the Destiny Trust Case. [*See* #50 at p.5.] The Joseph Project Case names The Joseph Project and other individuals and entities as defendants. [*Id.*] Tennison has apparently informed Plaintiffs of the Joseph Project Case and offered them the opportunity to join in the case. [*Id.*] In both cases—Destiny Trust Case and Joseph Project Case—"[t]here has been no defense to the lawsuits" and "[n]o discovery has been taken of Mr. Tennison or propounded amongst the parties in either lawsuit." [#62 at p.2.]

The third case is a criminal matter against Tennison. On June 17, 2019, the Arizona Attorney General indicted Tennison on eight counts, including two counts that refer to the Plaintiffs in this case and the alleged theft of money Plaintiffs wired to Defendants [#46 at pp.1-2]; those funds are also the subject of the Plaintiffs' Complaint. [*See generally* #1.] The remaining counts charge Tennison with crimes of (1) conspiracy to commit theft and other crimes; (2) fraudulent schemes and artifices; (3) money laundering in the first degree; (4) illegal control of an enterprise (The Joseph Project); and (5) sale of unregistered securities. [#46-1 at pp. 2-8.] The Final Trial Management

Conference in the criminal case is set for February 18, 2020, and trial is set to commence on February 25, 2020. [#62 at p.2.]

Because of the criminal case, the Tennison Defendants filed the Motion seeking a complete stay of this civil matter as it relates to these two defendants, citing Tennison's Fifth Amendment rights. [*See generally* #46.] It is not alleged that TII is the subject of any criminal investigation or trial. [*See generally* #46-1.]

### B.     LEGAL STANDARD

"The Constitution does not generally require a stay of civil proceedings pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights." *Creative Consumer Concepts Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009). Courts have the discretion to stay a civil action until completion of parallel criminal proceedings in the interests of justice. *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970).

> When deciding whether the interests of justice seem to require a stay, the court must consider the extent to which a party's Fifth Amendment rights are implicated. However, a defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. A district court may also stay a civil proceeding in deference to a parallel criminal proceeding for other reasons, such as to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution.

*Creative Consumer Concepts Inc.*, 563 F.3d at 1080-81 (internal citations and quotations omitted).

When applying this framework to a particular case, the Court must generally balance the plaintiff's interests "in moving forward with the litigation against the interests of a defendant asserting Fifth Amendment rights who faces the choice of being prejudiced

4

in the civil litigation if those rights are asserted or prejudiced in the criminal litigation if those rights are waived." *AIG Life Ins. Co v. Phillips*, No. 07-cv-00500-PSF-MEH, 2007 WL 2116383, at *2 (D. Colo. July 20, 2007) (quoting *In re CFS-Related Secs. Fraud Litig.*, 256 F.Supp.2d 1227, 1236 (N.D. Okla. 2003)). To that end, the Court considers the following factors: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendant has been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of, and burden on, the defendants; (5) the interests of the courts; and (6) the public interest. *Bd. Of Cty. Comm'rs of Cty. of Adams v. Asay*, Civ. No. 11-cv-02238-PAB-KLM, 2011 WL 5976144, at *2 (D. Colo. Nov. 29, 2011) (citing *AIG Life Ins. Co.*, 2007 WL 2116383, at *2). Further, courts in the District of Colorado "may consider alternatives to a general stay, including the imposition of protective orders, sealed interrogatories, a stay for a finite period of time, or a stay limited to a specific subject matter." *Id.* (internal quotations omitted).

### C. ANALYSIS

**1. Overlap of Issues**

The parties agree there is significant overlap between the criminal and civil proceedings regarding the Tennison Defendants. [#46 at pp. 5-7; #49 at pp.5-6.] This factor favors a stay.

**2. Status of Tennison's Criminal Case**

5

The second factor requires the Court to consider whether the criminal case is in the pre- or post-indictment stages. *See AIG Life Ins. Co.*, 2007 WL 2116383, at *2. "A stay is more likely warranted if an indictment has already been issued because (1) 'the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued,' and (2) 'the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations.'" *Id.* (quoting *M.D. Diet Weight Loss & Nutrition Clinic, L.C. v. Absolute Weight Loss & Nutrition Ctr., LLC*, No. 2:05–CV–605 TS, 2006 WL 2471524, at *1 (D. Utah Aug. 24, 2006)).

The criminal case against Tennison is in the post-indictment stages and trial is set for February 25, 2020. [*See* #46 at p. 8; #62 at p.2.] Thus, this factor favors a stay. *See AIG Life Ins. Co.*, 2007 WL 2116383, at *2.

**3.   Plaintiffs' Interests**

Plaintiffs have a general interest in the expeditious resolution of their case. *See Alattar v. Bell,* No. 13-cv-02990-MSK-KMT, 2014 WL 2566271, at *2 (D. Colo. June 5, 2014). This right "should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt.*, 713 F.2d 1477, 1484 (10th Cir. 1983). Considering Tennison's February 25, 2020 trial date, it could be said that the burden on Plaintiffs' interests would be limited. [*Cf.* #62 at p.2.] However, the criminal court may continue the trial date due to ongoing negotiations between Tennison and Arizona prosecutors. [#62 at p.2.] Thus, there is uncertainty either way.

Perhaps for this reason, the Motion seeks an indefinite stay. But an indefinite stay would place a serious infringement on Plaintiffs' interest to resolve this matter expeditiously. The uncertainty concerning the duration of a stay premised on resolution of Tennison's criminal matter disfavors a stay.

4. **Tennison Defendants' Interests and Burden**

Turning to the fourth factor, the Parties agree that Tennison has an interest in a stay in order to avoid being forced to choose between exercising his Fifth Amendment right and jeopardizing his defense in the criminal proceedings. [*See* #49 at pp.9-10.] But Plaintiffs assign little value to Tennison's interest in not being forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege because he continues to participate as a plaintiff in both the Destiny Project Case and the Joseph Project Case, post-indictment. [#49 at p.10.] Plaintiff relies on *In re: Matter of East 51st St. Crane Collapse Litig.*, wherein the court held that a witness who "foregoes the protection of the Constitutional privilege against self-incrimination by giving testimony to his advantage or to the advantage of his friends cannot in the same proceeding assert the privilege and refuse to answer questions that are to his disadvantage or the disadvantage of his friends." 916 N.Y.S.2d 471, 534-35 (N.Y. Sup. Ct. 2010).

Plaintiffs' reliance on this case is misplaced. First, *Crane Collapse Litigation* concerns the waiver and subsequent exercise of the Fifth Amendment privilege <u>in the same proceeding</u>. *See id.* Here, Plaintiffs' argument straddles three separate proceedings, and therefore, the analysis in *Crane Collapse Litigation* would seem inapposite. Second, the party in the *Crane Collapse Litigation* who asserted his privilege

7

against self-incrimination tried a sword-and-shield approach to the right—he invoked the right to avoid answering certain questions, but answered other questions over which he could have invoked the right. *Id.* at 534. The court determined that the party waived his right to assert the Fifth Amendment because he failed to invoke it as to all questions respecting the same subject matter. *Id.*

Here, there is no indication that Tennison has yet waived his Constitutional privilege against self-incrimination by way of the other two pending civil matters. [*See* #62 at p.2.] Tennison has not engaged in discovery or otherwise been required to seriously contemplate waiving his Fifth Amendment right in those cases. [*Id.*] No one has directed this Court to any statements he's made in either case which demonstrate a selective invocation of the privilege on his part. Indeed, should Tennison face such a decision in those lawsuits, he has indicated he "would assert his Fifth Amendment privilege or withdraw from the case. He has no other choice." [#50 at p.7.] Of note, both civil actions were filed <u>before</u> Tennison's indictment. [*Id.*] Thus, this is not a matter of Tennison "pick[ing] and choos[ing] the cases that are stayed, depending on whether [he] has exposure of civil or administrative liability or whether he stands to gain a financial advantage." [*Id.* at p.4.] At least at the present, the Court finds no inconsistency with Tennison's status as a plaintiff in the two related civil matters and the present case. This factor favors a stay.

5.  **Court Interests**

The fifth factor considers the interests of the Court. "The Court has a strong interest in keeping litigation moving to conclusion without unnecessary delay." *In re CFS,* 256

F.Supp.2d at 1241. An ill-advised stay may inconvenience courts by making the "docket less predictable and, hence, less manageable." *Stone v. Vail Resorts Dev. Co.*, Civil Action No. 09-cv-02081-WYD-KLM, 2010 WL 148278, at *3 (D. Colo. Jan. 7, 2010). However, resolution of the parallel criminal proceedings could increase the possibility of settlement in this case, at least as to the Tennison Defendants. *See AIG Life Ins. Co.*, 2007 WL 2116383, at *4. Further, the scope of discovery may be reduced by evidence from the criminal case, or based on the result of those proceedings. *See id.* (citing *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1138 (S.D.N.Y.1995)). This factor favors a stay.

**6.     Public Interests**

With respect to the sixth factor, the public's only interest in this case is a general interest in its efficient and just resolution. *See Waisanen v. Terracon Consultants, Inc.*, Civil Action No. 09-cv-01104-MSK-KMT, 2009 WL 5184699, at *2 (D. Colo. Dec. 22, 2009). The Court finds that this factor is neutral considering these goals.

**D.     CONCLUSION**

Weighing the relevant factors, the Court concludes that a stay as to Mr. Tennison and TII is warranted.[2]  Accordingly, IT IS ORDERED that the Tennison Defendants'

---

[2] Corporations do not have a Fifth Amendment privilege against self-incrimination. *Dreier v. United States*, 221 U.S. 394, 399-400 (1911). Therefore, a stay would typically not be warranted in favor of TII under these circumstances. *See e.g., Starlight Intern., Inc. v. Herlihy*, No. 97-2329-GTV, 1998 WL 560045, at *2 n.1 (D. Kan. Aug. 4, 1998). However, the Complaint alleges that TII has "no independent corporate existence that is distinguishable from that of" Tennison. [#1 at ¶285; *see also* #1 at ¶68 and ¶¶284-94.] It further alleges that Tennison used TII as a mere "alter ego" for his personal benefit. [#1 at ¶291.] As a result, it appears to the Court that TII's ability to defend itself in this action is significantly (if not solely) dependent upon Tennison, who intends to plead the Fifth.

9

Motion [#46] is GRANTED. Discovery as to Defendant Bradley J. Tennison and Defendant Tennison Investments Inc. is stayed pending resolution of Mr. Tennison's criminal matter.

IT IS FURTHER ORDERED that the Parties shall file a Joint Status Report indicating the efficacy of this litigation proceeding against the remaining Defendants, or of administrative closure of the case, subject to reopening, upon the conclusion of Tennison's criminal proceedings. The Joint Status Report is due by no later than January 31, 2020.

DATED: January 13, 2020.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

---

The Court can only conclude that TII will be unable to defend itself without Tennison's assistance, and as a result, will suffer prejudice if Tennison invokes his Fifth Amendment privilege. *See Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2002). The interests of justice warrant that the stay also apply to TII.